Okay, our last case of the day is 5-11-0527, People of the State of Illinois v. Michelle Riley. Mr. Wells? He's been very patient, Mr. Wells, sitting through all those arguments. My name is Larry Wells. I represent the defendant Michelle Riley. Ms. Riley, after a post-conviction petition dismissed at Stage 1, this was a pro se post-conviction petition, and it was dismissed on the grounds that it did not have a supporting affidavit, and because it was frivolous. Well, it did have a supporting affidavit, and it was not frivolous. In support of the reply brief, we put in an appendix, which I know that at least some of the copies that got sent out did not include that appendix, and so I have here copies of the appendix. I want to make sure that everyone has one. We were provided those today. Did the state receive the appendix? When did you receive that? Just a minute. Did you just receive that today, or did you get it in advance? Okay. So you don't need any additional time. Very good. Thank you. So we're going to start with the affidavit requirement, and I would ask everyone to turn to the first page of the appendix, which is RC-98. And the authority that we have for what constitutes an affidavit cited at page 5 of the reply brief, quote, an affidavit is simply a declaration of, in writing, sworn to clarify before some person who has authority under the law to administer oaths. Close quote. I think that's a pretty basic one, and we can see on page 98, this document meets every one of those requirements. There's no additional requirement for someone because they're filing a post-conviction petition or because they're a proffer or because they're in prison. An affidavit is an affidavit regardless, and this is most certainly an affidavit in support of this post-conviction petition. So the standard of review is de novo, which means that this Court will give no deference to the circuit court considering the legal question of whether this comports with the definition of an affidavit, and I think it's very clear from looking at it that this is an affidavit. In addition, the post-conviction petition is supported by a certificate, and it's stated to be an affidavit of verification. That is the last page of the appendix, at Part C-104. And in terms of that, you can see that it is stated to be a certificate, an affidavit for verification of this post-conviction petition, and it cites to the verification part of the Civil Practice Act, which is Section 5-1-109. Now, I take it this was at the back of a group of documents that all came in at the same time, which included the request for counsel and application of bailing, a written statement in support. And so your argument or interpretation of that would be that this was attached at the back saying everything in this whole package, I swear or affirm, under penalty of perjury is true. Right. That's the verification certificate. And so you'll notice, however, that all states that it's an affidavit at the top. It's not notarized. It says affidavit, but it's not notarized. Now, this exact situation was considered by the Illinois Supreme Court in the Cruz case, People v. Cruz, that's cited on page 5 of the requirement. In Cruz, there was a proper factual affidavit stating that these listed facts were sworn to be true. And then, in addition, there was a certificate that was stated to be an affidavit. However, there was no notarization on that purported affidavit in the Cruz case. In that context, under that situation, the Illinois Supreme Court said in 2013 that the merits of that post-conviction petition had to be considered because the verification affidavit, the lack of a notary stamp on the verification affidavit was a mere technical defect that could be corrected at the circuit court level. And so, following the Cruz case, we're going to turn then to the merits of this post-conviction petition. We cite the court again to page 98 where the facts are alleged. Ms. Riley's petition states that there was no lawyer present at the time she was interrogated by the police, even though she requested a lawyer. She stated that her counsel was ineffective because he failed to raise issues to protect her rights. She alleged that her lawyer misled her because she was told there was going to be jury instructions on voluntary manslaughter. And she said that she was held and investigated on two occasions for the crime before the grand jury indictment was filed. Now, the only standard here is that a gist of a claim be made. All the elements of a claim don't have to be presented. All of the facts don't have to be presented. So could you just say, you know, Fifth Amendment right violated, Sixth Amendment right violated, and that would be enough to state the gist? No, I believe that the current standard for this is that there have to be sufficient facts to identify what it is that is being, so that, for example, Okay, let me ask a specific question then. She says, ineffective counsel, attorney did not raise issues regarding rights being violated. Yes. Just take that one by itself. I don't think that's fair. Is that sufficient? By itself, I would say no. I would say that that's just like the list that she made. I do not think it's fair to take that in isolation. I believe that needs to be read in context. I would particularly point out to the court that this petitioner only went through ninth grade in high school, and that the PSI shows, the precise investigation shows that she's dull moral intelligence. She is a pauper in prison, and this has to be read expansively and literally. I think this has to be read as a package. Whether she put these things in a certain order or not, I think she's saying that she was deprived of the effective assistance of counsel because her rights were violated. And then she lists some of the rights that she talks about that are being violated. She says that, for example, she's arrested for investigatory purposes. Now, there's no two ways around that. Arrested for investigatory purposes is a constitutional violation. She says that she was surprised about she was expecting to have a jury trial on voluntary manslaughter, with voluntary manslaughter as an issue. Let me ask you specifically about, you know, when she does say Miranda rights during investigation and questioning, there's no lawyer present. On the day of her guilty plea, she appeared for a hearing on a motion to suppress statements. That's right. Okay. State argues by deciding to plead guilty and not pursuing that she's waived that. Oh, sure, sure. The argument is always going to be this guilty plea waives everything but jurisdictional issues, but that's fake. Only a voluntary guilty plea waives everything but jurisdictional issues. An involuntary guilty plea doesn't waive anything. And if you have ineffective assistance of counsel, the plea's not voluntary. And so if you – Okay, so that's the way you read her post-conviction petition is she's saying I didn't plead guilty voluntarily because of these – Oh, certainly. Yes, that's right. She's not required to set out every element in a proper order or anything like that. All she has to do is state the gist of a claim. It has to be one that can be reasonably interpreted and it has to be capable of amendment so that it fully states the claim. And there's no problem there at all. She says it's ineffective assistance of counsel, failure of counsel to protect her rights, and she lists specific ones. She says that she's expecting to have a jury trial. She says that she's expecting that she was arrested for investigatory purposes. During the guilty plea proceeding, she says she expected to have a jury trial. She was told she had a right to a jury trial. Yes. And she says I was never told I could have witnesses called during the guilty plea proceeding. She was told you can call witnesses. I believe that was contradicted by the record. Right, right. But there may be some other explanation for that that we don't fully understand. Some of the things that are a little more specific beyond just saying Miranda rights, Fifth Amendment, are directly contradicted by the record. Just that one that I can think of immediately. Well. And I'm not sure that it is under the context. There may be some other context for what she means by that that we don't understand. So we are required to read into it a meaning beyond what it actually says? Oh, I don't want to isolate that one sentence. I think that one sentence, when she says I was never asked or told I could have witnesses called, I think that one sentence is certainly in isolation. And I don't rely on that. The defense does not rely on that in any way at all. I don't know what you can do to get around the allegation that she was arrested for investigatory purposes. That is a constitutional violation. There's no two ways around it. And as far as the I was misled by the jury, she was going to submit jury instructions. Now, unless there are some questions, I'll return to this. Thank you. Ms. McCormick. Your Honor, just counsel. The defendant pled guilty. She got a very lenient deal. She pled guilty in exchange for dismissal of charges of murder of the victim's unborn son, a penis battery with hot liquids, a penis battery with a BB gun, a segregated battery, and one lawful restraint. She filed no motion to withdraw her guilty plea, and she did not take a direct appeal. So at this point in time, the defendant is limited to the narrow grounds of constitutional error under the Post-Protection Hearing Act, and that specifically relates to her, the voluntariness of her guilty plea. And the reason she's limited to those grounds is because a voluntary guilty plea weighs all errors, even constitutional ones, that are not jurisdictional. And I'm sorry, a fair reading of this petition does not assert any kind of involuntariness of the plea. It simply recites, alleges violations of her rights before the plea. There's nothing in there that pertains to whether the guilty plea was involuntary. And so. I mean, at no point does she say, I didn't want to plead guilty, or my attorney made me plead guilty, or there's nothing about her pleading guilty. Right, there's nothing in there that pertains to the voluntariness or the involuntariness of the guilty plea. A fair reading. Now, this court's review is denotable. No deference to the court below. But there are several reasons that this petition was correctly dismissed as frivolous at the first stage. First off, it has to do with the verification and the affidavit requirements. Now, the verification on, let me just use the defendant's appendix, F98, C98. It is notarized. It's not exactly the verification that's required. But the appellate court has held that the lack of a verification of the petition is not a grounds for dismissing at the first stage. So we'll pass that by. Good idea. Yes, good idea. But the other affidavit requirement, I'm going to call it verification versus affidavit requirement. You've got the affidavit requirement of 122-2. The Illinois Supreme Court in Collins and cases cited therein, it has said that the lack of a 122-2 affidavit to support the statements in a petition is fatal. Now, Cruz doesn't do anything to abrogate that. Cruz doesn't involve, if I recall correctly, Cruz does not involve an affidavit under 122-2, but involves the verification. And we are not talking about verification. We are talking about the lack of a 122-2 affidavit. And if you look at the defendant's statement, well, alleged defendant's statement, at 101-102, it's handwritten. It purports to be written by Michelle Riley, but it's not signed. And it's not accompanied by any kind of affidavit indicating that she wrote it. If you look on RC-104, which is the last page, it's a sign. It says it's a theant, and it's signed, but it isn't notarized. And under Villas-Gota and under other cases, it is not a valid affidavit. So the court could have dismissed it. I mean, this court confirmed dismissing on the fact that it is not supported by a 122-2 affidavit. But then again, if you look at the merits of it, if you look at the merits of the petition itself, it was probably dismissed because either the claims raised therein were claims that occurred prior to the voluntary guilty plea, and the claims therein make no assertion that the guilty plea was involuntary. So as the cases say, this represents a break in the events, and that everything, even constitutional error that happens before a voluntary guilty plea is weight. It can't be raised. It is weight, and that includes her alleged, you know, take it as true. Although it's not supported, you don't have to take it as true because it is not supported by the 122-2 affidavit. So these facts, although they're in here, they're not well-fled because they're not supported by that affidavit. But let's pretend they are. Even if they were, these all pertain to things that happened before the voluntary guilty plea. And then, even if they didn't, they're refuted by the record because if you look at the record of the guilty plea and the admonitions that she got, and the fact that that very day, the motion to suppress for counsel raises all these issues. She decides not to proceed with that. She decides instead to plead guilty. She certainly waived it not only by her voluntary guilty plea but by not proceeding on it when counsel was prepared to do so. So, I mean, there's a mat-truck-wide weight as to the issues that were raised in the motion to suppress. And as to the other issues about having a witness called, she was admonished, but she chose not to. As to the jury instructions for voluntary manslaughter where she said she was misled by her attorney's letter, she was admonished. She could have a trial where she could confront witnesses and call witnesses and presumably, you know, have her own instructions. But she chose not to do that. She chose to plead guilty. So all of these issues are waived and the court properly dismissed it as frivolous because, one, it's not supported by the 122-2 affidavit, and, two, it's either contradicted by the record because counsel does, in fact, want to raise these issues by way of a motion to suppress or it's waived by her otherwise voluntary guilty plea. And we ask the court to approve. Thank you. Mr. Wells? I'll go back to the certificate and affidavit problem for just a second. This should not take very long. The state argues that there's an insufficiency by cherry-picking these documents. They pick a document at the back here that's not an affidavit to say that is the affidavit just because it has the word affidavit at the top, and that's just absurd. It says right in it that it's a 5-1-109 verification certificate. That's what it says in the body, and that controls it. And it's perfectly true that page 99 is not a sufficient affidavit by itself, neither is 100, and neither is 104. Well, that doesn't have anything to do with it. There is a sufficient affidavit. It's on page 98. It's an in-writing document. It's sworn to in front of the felony. That's the affidavit. Turning to the merits, it's really important to remember that there's lots and lots of cases that we're citing here that talk about how a defendant can be tricked into pleading guilty where a lawyer comes in on the day of the guilty plea and says, I'm not ready for trial. We don't have the witnesses. You've got to get the best deal you can right now, and the defendant pleads guilty. The irregularities are off the record. She doesn't say any of that in here, though. I mean, you're asking us to read that into it. First of all, it's got to be broadly interpreted. What else does it mean if it doesn't mean that? She is trying to say that the rights were violated and her attorney was ineffective in what? In her being convicted. How was she convicted? It was the guilty plea. Ineffective assistance of counsel results in an involuntary guilty plea. There's no other way that can be read. How do you respond to the argument that the state's making where there's a break between all of her allegations seem to be before this guilty plea? You show up on the day of the motion to suppress, and then there's nothing asserted by her that happened that was unusual, and then she pleads guilty. How do you respond? Well, I can't agree that there's nothing asserted here that's unusual. She says, for example, she expects witnesses to be present. She says that she expects there's going to be a jury trial where there's going to be lesser-included offenses. This is just like the cases I was just talking about where the record itself was completely regular. There's lots and lots of cases like that. 402 was followed. Everything that happens in the guilty plea is completely regular. It looks regular, modest-faced, and the defendant says there's things that happened off the record that may lie guiltily involuntary. Now, every one of those elements does not have to be stated by somebody with a ninth-grade education locked up in Duane. They're not going to be capable of stating every one of these elements. We have got to read this generously for the paupers who have a right to have access to the courts. I would remind this court that when the Porter case came out and they changed this where you had to apply for counsel for the first time, this can't be, this is unfair. You're denying paupers access to the courts. And what was the response of the Illinois Supreme Court? We're not. And you know why we're not? Because it's so easy to get a lawyer. That's why. Even somebody with a ninth-grade education, even somebody who can't state everything correctly, that person is going to get a lawyer. Well, it's time to own up. The state of Illinois owes this woman a lawyer. To investigate these claims, the state's not going to be harmed by this. If she can't support these claims, it's going to be dismissed at stage two. But if it's affirmed the way it is now, this one's not going to get a lawyer. Thank you. We'll take the case under advisement. I think that concludes the docket for today. Court will be in recess.